IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUSTIN SUTMILLER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI, ) <br> Acting Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) | Case No. 22-cv-188-DES |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Justin Sutmiller ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court REVERSES and REMANDS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920(a)(4). This process requires the Commissioner to consider:

(1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors.  20 C.F.R. § 416.920(a)(4)(i)-(v).  The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five.  *Lax v. Astrue,* 489 F.3d 1080, 1084.  If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g).  The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence.  *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020).  Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938).  In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *Noreja,* 952 F.3d at 1178 (quotation omitted).  Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.     Claimant's Background and Procedural History

On July 11, 2018, Claimant applied for supplemental security income benefits under Title XVI of the Act. (R. 29, 176-81). Claimant alleges he has been unable to work since October 31, 2017, due to human immunodeficiency virus ("HIV"), depression, anxiety, high blood pressure, and human papillomavirus ("HPV"). (R. 176, 204). Claimant was 49 years old on the date of the ALJ's decision. (R. 41, 51). He has a high school equivalent education and past work as an animal breeder. (R. 51, 68).

Claimant's claim for benefits was denied initially and on reconsideration, and he requested a hearing. (R. 77-98, 115). ALJ Edward M. Starr conducted an administrative hearing and issued a decision on August 28, 2020, finding Claimant not disabled. (R. 29-41, 48-72). The Appeals Council denied review on June 1, 2022 (R. 1-7), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Claimant filed this appeal on June 29, 2022. (Docket No. 2).

## III.    The ALJ's Decision

The ALJ found at step one that Claimant had not engaged in substantial gainful activity since the application date of July 11, 2018. (R. 31). At step two, the ALJ found Claimant had the severe impairments of depression, anxiety, and HIV. (R. 31). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 31-33).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> [T]he claimant is limited to simple, routine, repetitive tasks. He can occasionally interact with supervisors, co-workers and the public. He can respond to supervision that is simple, direct and concrete.

(R. 33). The ALJ provided a summary of the evidence that went into this finding. (R. 33-39).

At step four, the ALJ concluded Claimant could not return to his past relevant work. (R. 39). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including marker, routing clerk, and car wash attendant. (R. 40). Accordingly, the ALJ concluded Claimant was not disabled. (R. 40-41).

## IV.   Issues Presented

In challenging the Commissioner's denial of benefits, Claimant asserts the ALJ failed to: (1) provide a narrative discussion at step four that explains how the evidence supported the RFC, (2) properly evaluate the medical source opinion of Dr. Patricia Walz, (3) account for all his impairments and limitations in the RFC, (4) properly assess the consistency of Claimant's subjective symptoms, and (5) present a hypothetical question to the VE containing all of his limitations at step five. (Docket No. 13 at 9-15). The Court agrees with Claimant's first and second allegations of error, and therefore reverses and remands for further proceedings.

## V.   Analysis

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. A "medical opinion" is a statement from a medical source about what a claimant "can still do despite [her] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in four work-related abilities. 20 C.F.R. § 416.913(a)(2). These abilities include the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[.]" 20 C.F.R. § 416.913(a)(2)(i). If the record contains a medical opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain

4

why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . ." 20 C.F.R. § 416.920c(a). Instead, the ALJ evaluates the "persuasiveness" of medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion or finding. 20 C.F.R. § 416.920c(a), (c). Supportability and consistency are the most important factors, and the ALJ must always explain how he considered those factors in the decision.[1] 20 C.F.R. § 416.920c(b)(2). The ALJ is not required to articulate findings on the remaining factors unless there are two or more medical opinions about the same issue that are equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 416.920c(b)(2), (3).

At the request of Claimant's attorney, Dr. Walz conducted a consultative mental status examination of Claimant on August 5, 2020. (R. 1269-73). Dr. Walz observed Claimant had an anxious and sad mood, a consistent affect, and a logical and goal-oriented thought process. (R. 1271-72). Dr. Walz estimated Claimant's intellectual functioning to be in the low-average range. (R. 1272). She indicated Claimant's symptom presentation was consistent with diagnoses of bipolar II disorder, most recent episode depressed; cannabis use disorder, mild; and stimulant use disorder, severe, in sustained remission. (*Id.*) Dr. Walz further indicated that Claimant's

---

[1] Supportability refers to the relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support his medical opinion. 20 C.F.R. § 416.920c(c)(1). Consistency refers to the consistency of a medical source opinion "with the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 416.920c(c)(2).

attention was intact, but his concentration was impaired; his cognition was slow; and his information processing was slow. (R. 1273).

The same day, Dr. Walz also completed a medical source statement regarding Claimant's ability to do work activities. (R. 1274-77). The form she completed asked for an opinion on the degree of Claimant's limitations in various functional areas – either none, mild, moderate, marked, severe, or extreme – resulting from Claimant's mental impairments.[2] Dr. Walz checked boxes indicating Claimant was severely limited in eleven of the thirty-five functional abilities she assessed, including his ability to: (1) maintain attention and concentration for extended periods of time; (2) perform at a consistent pace without an unreasonable number or length of rest periods; (3) interact with the general public; and (4) accept instructions and appropriately respond to criticism from supervisors. (R. 1274-76). Dr. Walz indicated Claimant was markedly limited in six of the functional abilities she assessed, including his ability to: (1) deal with work stresses; (2) carry out detailed or complex instructions; and (3) sustain an ordinary routine without special supervision. (*Id.*) Dr. Walz indicated Claimant had moderate limitations in sixteen functional abilities, including his ability to: (1) relate to co-workers; (2) interact with supervisors; (3) make simple work-related decisions; (4) understand and remember detailed or complex instructions; (5) carry out very short and simple instructions; and (6) respond appropriately to changes in the

---

[2] The form defined "none" as "[n]o limitations. If present, they are transient and/or expected reactions to psychological stresses and cause no diminution of performance." (R. 1274). Mild limitation was defined as "[f]rom zero to nine percent (0-9%) of work time, there is a slight limitation, but the individual can generally adequately function." (*Id.*) Moderate limitation was defined as "[f]rom ten to twenty percent (10-20%) of work time, there is a noticeable diminution in performance, which would intermittently impair performance to less than the industry norm." (*Id.*) Marked limitation was defined as "[f]rom twenty-one to thirty-five percent (21-35%) of work time, the individual cannot usefully perform or sustain the activity." (*Id.*) Severe limitation was defined as "[f]rom thirty-six to fifty percent (36-50%) of work time, very seriously impairs the ability to perform work activities by interfering with either social relations or occupational functioning, or some in both." (*Id.*) Finally, extreme limitations was defined as "[t]here is a major limitation in performance with no useful or sustained ability to function from fifty-one to one hundred percent (51-100%) of the time." (*Id.*)

work setting or work procedures. (*Id.*). Dr. Walz found Claimant was mildly limited in the remaining two functional abilities she assessed, specifically his ability to understand and remember very short and simple instructions, and to travel in unfamiliar places or use public transportation. (*Id.*)

In his written opinion, the ALJ found Dr. Walz's "severe and marked" limitations were unsupported by her own examination and were inconsistent with Claimant's ability to manage his healthcare needs and activities of daily living successfully and without assistance. (R. 38). The ALJ thus concluded Dr. Walz's "severe and marked" limitations were not persuasive. (*Id.*) As to Dr. Walz's remaining limitations (i.e., those she identified as moderate and mild), however, the ALJ provided no analysis of their persuasiveness, much less explain how the RFC accounted for them. This analysis was particularly important because the ALJ purported to wholly reject Dr. Walz's opinion regarding sustained concentration and persistence limitations and nearly all her social functioning limitations,[3] but nonetheless included concentration, persistence, and social functioning limitations in the RFC assessment without explanation. *See Chapo v. Astrue,* 682 F.3d 1285, 1291-92 (10th Cir. 2012) (finding error where the ALJ "fully discounted the bulk of" a medical source's opinion but accepted a restriction in dealing with the public "with no explanation at all as to why one part of his opinion was creditable and the rest was not."); *see also Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (citations omitted). Likewise, despite finding Dr. Walz's "narrative opinion" persuasive, the ALJ provided no explanation as to how the RFC accounted for such opinion. Thus,

---

[3] The only social functioning limitation Dr. Walz identified a moderate limitation in was Claimant's ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (R. 1276). Dr. Walz found Claimant either markedly or severely limited in the remaining six social functioning abilities she assessed. (*Id.*)

7

it is the lack of adequate explanation, in addition to the failure to account for all the limitations set forth by Dr. Walz that requires remand. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (indicating that the Commissioner "must include a narrative discussion describing how the evidence supports each conclusion" as to a claimant's work-related limitations).

## VI.    Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is REVERSED and REMANDED for proceedings consistent with this Opinion and Order.

SO ORDERED this 26TH day of September, 2023.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE